Welch, J.
The first question presented for our opinion and advice is, what shall be understood as the “ town of Zanesville,” within the meaning of this will? It seems to us that this question has been substantially answered in the case of The Zanesville Canal and Manufacturing Company v. The City of Zanesville, 20 Ohio, 483. The court in that case decided that the words are to be understood in their “ most general and popular sense;” that they are not to be confined to the town as incorporated, or as it existed at the time of testator’s death; but that they are to be understood in the sense in which they are popularly used, or may be used, at the time the -charity is dispensed. The court say in the case referred to : “ It could not but have been contemplated by its original founder, that it would, in process of time, expand itself greatly beyond the limits which at that time served its municipal purposes.” And, accordingly, the court advised that the trustees should not be limited by .any arbitrary lines, whether of town, borough, or city; but that the fund should be administered according to the dictates of that “ enlarged philanthropy which it may be supposed actuated its founder in making the bequest.” In accordance with this liberal interpretation, with which we fully agree, we have no hesitation in advising that all the poor children residing within any of the present or .future additions to the city, on either side of the river, should be *335 •considered and treated as beneficiaries of the bequest, including those in said village on the west side of the river.
As to the uninvested funds, we advise and direct that they =*=be invested otherwise than in the stock of said Zanesville Canal and Manufacturing Company, in such way and manner, and at such time or times, as shall be found convenient by the trustees, and as will make the funds most productive and safe.
The question of greatest difficulty in the case, and that upon which the direction and advice, of the court is mainly asked, regards the manner of dispensing the charity. Shall the present plan of applying the principal part of it to aid the public schools of the ■city be continued ? Shall the whole fund be used in that way, as seems to be claimed on behalf of the city? If not, in what other manner shall it be dispensed?
We have no hesitation in advising and directing, that the plan •of aiding the public schools be discontinued. Appropriated thus, the fund inures equally to the benefit of the rich and poor children, .and has the effect merely to lighten the school tax assessed upon the property of the city. As a permanent plan, in our judgment, it would be a perversion of the gift from the purpose of the donor, which was that it should be wholly expended for the benefit of the “ poor children ” in the town or city.
But the purpose of the donor being to establish a “ school ” or “ institution ” for the use of poor children, and the state having supplied free schools for all children, what shall be done with the fund ? Is the object of the charity exhausted, and must the fund be paid over to the heirs of the donor? We think not. Wo must look deeper than the mere words of this donation, and, through them, see its spirit. We must inquire what the donor himself would now direct, had he lived to witness the present altered circumstances of the case. His object was to educate poor children to the extent of the fund bequeathed, and the “ school ” or “ institution ” provided for in the will, were mere means to that end. Had circumstances remained unchanged, perhaps a free “school” for poor children would have been the only necessary and appropriate instrumentality for that purpose, and the whole fund might have been exhausted, by thus merely remitting tuition fees to the scholars who should attend. But this means having ^become impracticable, can no other be adopted to the same end ? The law having anticipated and supplied the charity, so far as free schools are required, should *336 not the trustees reach their hands further, and do more, and for that purpose resort to other means to effect, as far as the fund will go, the ultimate object of the donor? That object was, to instruct poor children in spite of their poverty. It was, so far to relieve their poverty as to make education accessible to them — to lift from them, as it were, that poverty which shuts out the light of knowledge, or so far to break through it, as to let in that light. This can be done by other methods than by merely remitting their tuition fees, which form but án inconsiderable part of the expenses of an education. It can be done as well by furnishing books. It can be done, when •other means fail, by furnishing shoes, clothes, and, in rare cases, perhaps even food. Of course, means of this nature should be-made incidental or secondary to the central idea of a school or institution, and should only be resorted to as aids thereof, in furthering the ultimate object in view, to wit, the education of poor children, and then only when the funds will admit of their use. Among such other means, I would recommend and urge a system -of night schools, as perhaps less objectionable, and more efficient for-reaching the minds of children who can not, or will not, attend upon the public schools of the city, than'any other that can be named. Such a system, it seems to me, might be arranged to bi'ingthe schools, as it were, home to the children, by making the schools numerous and small, or by distributing them, or alternating them, in the different parts of the city. All would have time to attend, such schools, and much of the difficulty arising from want of clothing, suitable for the appearance of children in the public schools, would be obviated. The use of books might be supplied in such schools, and the books themselves be retained in the schools, or loaned, or given to the scholars, as found to be best adapted to the end in view. Of course, such a school might also be opened and taught in the main edifice appropriated for general instruction.
Another use to which this fund can, doubtless, be legitimately-applied, is, in furnishing to poor children an education *in. the higher branches of learning, such as are not taught in the common or public schools of the city. If the child has not riches, there is no good reason why he should not, if found a suitable subject for it, have a liberal education instead of riches. When the rich man’s child has gone through the public schools, he has the-means to go further and complete an education. The poor man’s child has no such means. To furnish such means, in proper cases, *337 is clearly within the object of this donation. The counsel for the-trustees seems to claim that this should now be regarded as the-principal or only object. We think otherwise. We believe the purposes of the donor would be best subserved by making that object secondary to the procurement of a common or rudimentary education for the mass of poor children in the city. To devote the whole fund, or the principal part of it, to the former use, would be to establish an institution with a full corps of professors, at high salaries, and with comparatively few students to instruct. To admit into such an institution, as it is suggested by counsel might be done, “ pay-students ” from outside the city, would be either to leave the fund undiminished by their admission, or to expend it on objects not contemplated by the donor.
I know not that my brethren agree with me in all I have said, as to the manner of administering this charity within the limits specified; but we concur in advising that the scope and extent of the powers of the trustees are as I have indicated. In the absence of any report of a master, or of evidence of the particular circumstances, we do not undertake to adopt or advise any plan or scheme-for the exercise of these powers. The will intrusts a largo discretion to the trustees, and they are perhaps as competent to adopt a scheme for themselves, which, under all the circumstances, will be best adapted to fulfill the purposes of the gift, as any officer of the court would be to devise one for them; and we leave that matter to their discretion, to be exercised as varying circumstances-may require.
We advise, however, that the trustees maintain and use a suitable buildi-ng for general purposes of instruction, supplied with such teachers in the different branches of learning, as *they shali from time to time find necessary, and as the wants of the beneficiaries may require; but in connection therewith, or in addition thereto, to employ such other agents and instructors, to operate elsewhere in the city, as may be found convenient and necessary in executing their powers aforesaid. We advise, moreover, that in all cases where any part of the funds shall be placed in the hands of other associations or persons, for distribution or use in effecting the objects of the donations, such associations or persons shall be regarded as mere aids or agencies of the trustees, who should at all times retain in their own hands the power to super - *338 vise and control the administration of the funds, and to withdraw them at pleasure.
A decree will be entered accordingly, as follows:
DECREE.
This cause came on to be heard upon the petition and amended petition 'of the plaintiffs, the answers of the defendants, and the exhibits and testimony, and was argued by counsel. On consideration whereof, the court direct and advise that the uninvested part of the fund, referred to in the petition, be invested otherwise than in the stock of said Zanesville Canal and Manufacturing Company, in such way and manner as shall be most productive and safe. And the court are of opinion, and so advise said trustees, that it is'the true meaning and intent of said will, that, in the selection of children to be the beneficiaries of said bounty, they are not confined- to the limits of the original town of Zanesville, or to the corporate limits of the borough or city of Zanesville, but may and should select them also from the said village of West Zanesville, or from any and all other additions to said town or city, which, in the common and popular sense, constitute parts thereof at the time of selection. And the court further advise and direct the said trustees to discontinue the present plan of applying a portion of the proceeds of said trust fund in aid of the common or public schools of said city of Zanesville, being of opinion that any permanent appropriation of said funds, or any portion of them, in that way would be a perversion of the same, from the true objects and purposes *of the donation. And the court, further proceeding to advise said trustees as to their duties in the premises, are of opinion, and declare, that the real and ultimate purpose of the donor was to educate poor children resident in Zanesville; that, in carrying out that purpose, the powers of the trustees are not confined to the mere establishment and maintenance of a free school or institution for the education of poor children; but that they may, when found proper and necessary to the end proposed, also adopt other means for the education of such poor children, in connection with such school or institution, and as incidental thereto, including, among such other means, that of so far relieving the wants of such poor children as to make their education practicable, when that end can not be otherwise attained, and the proceeds of said fund are sufficient for that purpose. But *339 the court further advise, that the trustees maintain and use at all times some suitable edifice or edifices for instruction, and that when they see proper to dispense any part of said funds through other associations or persons, they retain in their own hands a supervisory power over them, and the right at all times to control their action. And it is further ordered and adjudged by the court, that all the cost herein be paid by said trustees out of the proceeds of said trust fund.
Day, C. J., and White, Brinkerhoee, and Scott, JJ., concurred.